[THIRD DEPARTMENT, GENERAL TERM, at Albany, February 7, 1871. *Miller*, P. J., and *Parker* and *James*, Justices.]

● ● ●

BAKER vs. BYRNE and others.

The owners of a vessel are not bound to close the hatches, at night, so as to protect from injury a trespasser, or one who has no right or license to be upon the vessel.

The principle on which owners of property are liable for acts of negligence in the use thereof, is that they are in duty bound to keep their property in such a condition that persons who are lawfully on the premises shall not be injured; but it does not extend to those who are on the premises of others without right, or without permission.

APPEAL by the plaintiff from a judgment dismissing the complaint, and from an order denying a motion for a new trial.

This action was brought by the plaintiff to recover damages for an injury suffered by him from falling down a hatchway of the barge *Pilgrim*. It was admitted by the

defense that the barge was owned by the defendant George C. Byrne. The accident occurred at Jersey City, N. J., in August, 1863. The plaintiff was then mate, and in charge of the steamer *Oriole.* At the time of the injury, there was next to the dock, in Jersey City, a steamer named *Carnac.* The barge *Pilgrim* was lying next to the *Carnac,* and the *Oriole* was lying outside of and next to the *Pilgrim.* The evidence showed that there was no way of getting on board of the *Oriole* except by going over the *Carnac* and *Pilgrim;* unless it was by means of a small boat.

The plaintiff had been going over the *Carnac* and *Pilgrim* to get to his own boat for a day or two previous to the accident. The accident occurred at about 9 o'clock in the evening of August 23. That evening was dark, and the upper deck of the *Pilgrim* a little wet and slippery, and the plaintiff went from the upper deck to the main deck of the *Pilgrim* to pass over to his own boat. The hatchways on board the *Pilgrim* were on the main deck. The plaintiff had usually gone over the upper deck of the *Pilgrim,* and in doing so would not have observed the hatchways. On the evening in question, the hatchways of the *Pilgrim* had been left open, and the plaintiff fell through one of them, and thereby had his hip dislocated or very much injured.

The defense was a general denial, and a specific denial of any negligence in respect to the hatchways or any other part of the *Pilgrim.*

The action was tried before the Hon. ALBERT CARDOZO and a jury. The evidence was conclusive as to the accident, and its consequences. After the testimony on the part of the plaintiff was closed, the defendants moved to dismiss the complaint, for the following reasons: 1st. The plaintiff was a trespasser on board of the defendants' boat. 2d. There was no license shown for him to be there, either express or implied. 3d. There was no proof of a custom

permitting the plaintiff to be there, under the circumstances disclosed in this action. 4th The plaintiff was not entitled to a way over the defendants' boat, as a matter of necessity. 5th. The defendants were not under any duty to the plaintiff to keep their hatches closed; the plaintiff was not their servant, and if he had been, and was injured by the negligence of his co-servants, he could not recover. 6th. The plaintiff's negligence contributed to, and actually produced the injury. The court granted the motion; assigning these reasons: "I have no doubt the plaintiff was a trespasser; he had no license to go on board this barge; there is no proof that on the previous occasions, when he traversed that boat, he did so with the knowledge of anybody; the proof is, he never saw anybody there; he had no license from anybody who had the right to control the barge; he went on board when it was dark, and whether there was negligence on board of the boat or not, is of no importance, as he had no right to be there; he brought the misfortune on himself, and the defendants are not responsible for it." The complaint was therefore dismissed, and the plaintiff's counsel excepted.

*Wm. A. Coursen,* for the appellant.

I. Hatchways of vessels at docks invariably have covers, which covers are always put on in the evening, when the work is finished. This accident occurred on a Sunday, at 9 o'clock in the evening, when no work had been done during the day. The plaintiff had a right to assume that the hatchways of the *Pilgrim* were closed, and that no accident could occur from negligence in that respect.

II. There is an implied license to all vessels to fasten to all docks upon or adjacent to navigable waters. That doctrine is clearly established in the case of *Heaney* v. *Heeney,* (2 *Denio,* 625.) The court will take notice that Jersey City is upon navigable waters, and that the docks are

open to the use of all vessels, unless expressly prohibited, (of which there is no pretense in regard to the *Oriole*, at the time above mentioned.)

III. The court should have taken judicial notice of the universal custom for parties to go over the deck of one vessel to get to another vessel, when both are lying by the same dock. This custom is one prevailing in every part of the mercantile word, and the court will recognize it as fully as the right or custom of any person to walk on the sidewalks of our streets. (*Sleight* v. *Hartshorne*, 2 *John.* 531, *&c., particularly* 541. *Browne* v. *Scofield*, 8 *Barb.* 239.) In this case the testimony is clear that there was no way of reaching the deck of the plaintiff's vessel except by going over the deck of the *Pilgrim*. This court is well aware of the general usage, by which a vessel attached to a vessel next a dock, is always approached by parties going over the vessel at the dock. It seems idle to say that the passengers who, in going from a vessel to the dock, go across the deck of another vessel fastened to that dock (or the deck of an intermediate vessel) are or can be in anywise considered trespassers.

IV. If it were possible to regard the plaintiff, under the circumstances, as in any degree a technical trespasser, yet he is entitled to recover in this action. There is no suggestion or pretense that the plaintiff went on board of the *Pilgrim* for any unlawful purpose ; he was merely on his (and the only) way to his own boat; there was no negligence whatever on his own part; he was a sailor, and knew (or had a right to suppose) that the hatchways of the *Pilgrim* were closed—he knew that the invariable custom of vessels was to put on the hatchways in the evenings, and as the accident was on a Sunday, the plaintiff walked on over the deck of the *Pilgrim* with the same confident feeling of security that he would have had on the deck of his own vessel. Even if without a semblance of right, he had gone on the deck of the *Pilgrim*, he had an undeniable

legal right to feel free from such a danger and injury as he encountered. The defendants were negligent in the highest degree, in leaving open at night the hatchways of their vessel, and, as in the case of spring guns or ferocious dogs, kept upon the premises, the defendants should respond for any injury occasioned by their gross carelessness and negligence. We claim, that if the accident had occurred to the plaintiff whilst merely straying over the *Pilgrim,* the defendants would be liable. (*Bird* v. *Holbrook,* 4 *Bing.* 628, 15 *Eng. Com. Law,* 91. *Loomis* v. *Terry,* 17 *Wend.* 496, 501, *N. Y. Transcript, January* 8, 1869. *Driscoll* v. *Newark and Riverdale Stone and Cement Co., N. Y. Ct. of Appeals, January* 1, 1868. *Birge* v. *Gardiner,* 19 *Conn.* 507. *Kerwhacker* v. *Cleveland, C. and C. R. R.,* 3 *Ohio,* 172. *Lynch* v. *Nurdin,* 1 *Ad. & E.* 30, *a.*) This last case sustains the view now generally adopted in our courts, that even when there be some degree of negligence (comparatively excusable) on the part of the plaintiff, yet he shall recover in an action where the negligence of the defendant is absolutely without excuse, as was the negligence of the defendants in the case now before the court. (*Redfield on Railways,* 330, § 2, 331, § 4, 394, 395. *Althorf* v. *Wolfe,* 22 *N. Y.* 355, 364. *Pierrit* v. *Moller,* 3 *E. D. Smith,* 574.)

*Ira Shafer,* for the respondents.

I. The plaintiff was a trespasser when crossing the defendants' boat, and he crossed the same at his peril. Trespass could have been maintained against him, and at least nominal damages recovered. (*Wells* v. *Howell,* 19 *John.* 385.) And he could not maintain an action for injuries sustained while thus crossing. (*Bush* v. *Brainard,* 1 *Cowen,* 78, *and cases cited.*) The court says: "But in all cases where damages are sustained by the plaintiff, in consequence of the use which the defendant makes of his own property, it is necessary to inquire, not only whether the

defendant has been guilty of culpable negligence on his part, but whether the plaintiff is free from a similar charge. In the case of *Blyth* v. *Topham*, (*Cro. Jac.* 158,) the defendant digged a pit in a common, and the plaintiff's mare being straying there, fell into the pit and perished. The court held that no action lay, because the plaintiff, showing no right why his mare should be in the common, the digging of the pit was lawful as against him. His loss was, therefore, *damnum absque injuria.* Otherwise, had he digged the pit in the highway. (*Roll. Ab.,* 88 *Co. Litt.,* 56, *a.*) In *Townsend* v. *Wathen*, (9 *East*, 277,) the defendant set traps in his uninclosed wood, which was intersected by highways and paths. The plaintiff's dogs were caught in the traps and injured, for which he recovered. Chief Justice Ellenborough places the defendant's liability on the fact that the traps were set and baited with strong-scented meats, so near the plaintiff's yard, where his dogs were kept, that they might scent the bait without trespassing on the plaintiff's wood. And he asks what difference there is, in reason, between drawing the animal into the trap, by means of his instinct, which he cannot resist, and putting him there by manual force ? In *Clark* v. *Foot*, (8 *John.* 421,) the court says: "It is lawful for a person to burn his fallow, and if his neighbor is injured thereby, he will have a remedy, if there be sufficient ground to impute the act to the negligence or misconduct of the defendant." And in *Wells* v. *Howell*, (19 *John.* 385,) it was decided that the owner of an uninclosed field may maintain trespass against the owner of a horse grazing there, unless the defendant show a right to permit his cattle to go at large."

II. There is no pretense he was entitled to be there by virtue of any custom. The cases of *Hinton* v. *Locke*, (5 *Hill*, 437,) and *Sleight* v. *Hartshorne*, (2 *John.* 531,) much relied upon by the plaintiff, does not sustain him.

III. If he had been a servant of the defendants, and an injury had resulted from the negligence of the defendants'

servants in not closing the hatches, the plaintiff could not recover. (*Brown* v. *Maxwell*, 6 *Hill*, 592.) In such a case he would take the risk of the common employment. (*Wright* v. *N. Y. Central R. R. Co.*, 25 *N. Y.* 562.)

IV. The plaintiff was not the servant of the defendants, and they were not under any duty to him. (*Seymour* v. *Maddox*, 71 *Eng. C. L.* 326.) *Ryan* v. *Fowler*, (24 *N. Y.* 410,) modifying this case, is the strongest case in favor of servants, to be found in the books. (*Roulston* v. *Clark*, 3 *E. D. Smith*, 366. *Carolus* v. *The Mayor*, 6 *Bosw.* 15. *Blake* v. *Ferris*, 1 *Seld.* 48.)

V. There is no pretense of a private right of way, nor a public right of way; nor of a license, either express or implied.

VI. There is no pretense, even if there was a license to cross, that that would entitle the plaintiff to recover, or that it imposed upon the defendants any duties. It would simply protect the plaintiff from an action of trespass, until revoked. (*Miller* v. *Auburn and Syr. R. R. Co.*, 6 *Hill*, 61.)

VII. There is no pretense that he had any right to cross over by reason of any contract between the parties.

VIII. Clearly and undisputably the plaintiff was negligent, upon his own theory.

IX. There is no such thing as a right of way by necessity. That right exists as against a grantor in favor of the grantee of land, whereby the grantor has no other way or mode of ingress or egress.

X. The cases cited by the plaintiff at special term do not touch the questions involved in this case. In *Birge* v. *Gardiner*, (19 *Conn.* 507,) the plaintiff was an infant accustomed to pass through the defendant's gate, which was so carelessly hung as to fall upon the plaintiff, an infant of six years of age. *Lynch* v. *Burden*, (1 *Adol. & Ell.* 30,) is to the same effect. These cases are the leading ones relied upon by the plaintiff.

Merriam *v.* Kellogg.

*By the Court*, INGRAHAM, P. J.  The plaintiff, when cross-ing the defendant's vessel, had no right or license to be there, and the defendants owed him no duty which threw on them the obligation to close the hatches of their vessel at night, so as to protect a trespasser from injury.

The principle on which persons are held liable for such acts, is that they are in duty bound to keep their property in such a condition that persons who are lawfully there shall not be injured; but it does not extend to persons on the defendant's premises without right, or without permission.

The cases in 3 *E. D. Smith*, 366; 1 *Cowen* 78, and 1 *Hilton*, 425, are cases exemplifying this rule.

Judgment affirmed.

[FIRST DEPARTMENT, GENERAL TERM, at New York, February 7, 1871. *Ingraham*, P. J., and *Geo. G. Barnard*, Justice.]